IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


DAVID ROCKWELL and
AMANDA GALE SALAZAR,

      Plaintiffs,

v.                                        No. 17cv1185 MCA/KBM

CORAM SPECIALTY INFUSION
SERVICES, INC., a Foreign Corporation,
and KELLY COWAN, an individual,

      Defendants.


**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Plaintiffs' *Motion to Remand and Brief in Support* [Doc. 10]. The Court has considered the parties' submissions and the relevant law, and is otherwise fully informed. For the following reasons, the Court **GRANTS** Plaintiffs' *Motion*.

I.    **Background**

Plaintiffs David Rockwell and Amanda Gale Salazar (Plaintiffs) filed a complaint in the First Judicial District Court against their employer, Coram Specialty Infusion Services, Inc. (Coram), and another Coram employee, Kelly Cowan (Cowan; collectively, Defendants). [Doc. 1-2] In the *Complaint*, Plaintiffs assert claims of retaliatory discharge against Coram and tortious interference with contractual relations against Cowan. [Doc. 1-2] Plaintiffs state that they are residents of New Mexico and

allege that Defendant Cowan is also a New Mexico resident. [Doc. 1-2, ¶¶ 1, 2, 5]

Defendants removed the matter to this Court, invoking this Court's jurisdiction under 28

U.S.C. § 1332(a). They provided an affidavit stating that Coram is a limited liability

company whose only member is a corporation incorporated in Delaware with its principal

place of business in Rhode Island. [Doc. 1-3] *See Americold Realty Trust v. Conagra*

*Foods, Inc.*, 136 S. Ct. 1012, 1015 (2016) (affirming the Tenth Circuit's holding that "the

citizenship of any 'non-corporate artificial entity' is determined by considering all of the

entity's 'members,' which include, at minimum, its shareholders." (internal quotation

marks and citation omitted)); 28 U.S.C. § 1332(c)(1) (stating that "a corporation shall be

deemed to be a citizen of every State and foreign state by which it has been incorporated

and of the State or foreign state where it has its principal place of business."). The parties

do not dispute that, while Defendant Coram is a foreign entity, Defendant Cowan is not,

and, therefore, complete diversity is not present here. [Doc. 1, ¶ 5; Doc. 10, pg. 1] In the

*Notice of Removal*, Defendants argued that although all of the parties are not diverse, as

required under 28 U.S.C. § 1332(a), this Court should nevertheless exercise jurisdiction

because Defendant Cowan was joined solely to defeat removal, i.e., fraudulently joined.[1]

[Doc. 1] Plaintiffs now move for remand, contending that they have a viable claim

against Defendant Cowan and that this Court lacks jurisdiction over their *Complaint*.

[Doc. 10]

---

[1] Plaintiffs do not dispute Defendants' assertion that the amount in controversy exceeds
$75,000. [Doc. 1, ¶¶ 15-22; Doc. 10]

## II.  Discussion

Federal law provides that the United States District Courts have original jurisdiction over all civil actions where the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.  *See* 28 U.S.C. § 1332(a). Diversity jurisdiction depends upon all parties to one side of the case having a different citizenship from all parties to the opposing side.  *See City of Neodesha v. BP Corp. N. Am.*, 355 F.Supp.2d 1182, 1185 (D. Kan. 2005).

An action initially brought in a state court may be removed to a federal district court pursuant to the authority set forth in 28 U.S.C. § 1441, which states, in pertinent part, that

> [e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).

"'Removal statutes are strictly construed, and any doubts about the propriety of removal are resolved in favor of remand.'"  *See City of Neodesha*, 355 F.Supp.2d at 1185 (*quoting Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3rd Cir.1990)).  When removal is challenged, the burden rests with the removing party to prove that the federal district court has original jurisdiction.  *City of Neodesha*, 355 F.Supp.2d at 1185.

In some instances, where the parties are not diverse, a removing party may nevertheless assert diversity jurisdiction on the ground that a non-diverse party was fraudulently joined.  Our Tenth Circuit has explained that

[u]pon specific allegations of fraudulent joinder the court may pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available. The joinder of a resident defendant against whom no cause of action is stated is patent sham and though a cause of action be stated, the joinder is similarly fraudulent if in fact no cause of action exists. This does not mean that the federal court will pre-try, as a matter of course, doubtful issues of fact to determine removability; the issue must be capable of summary determination and be proven with complete certainty.

*Dodd v. Fawcett Publications, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964) (citations omitted);

*see Nerad v. AstraZeneca Pharm., Inc.*, 203 F. App'x 911, 913 (10th Cir. 2006) (unpublished[2]) (stating that "[w]hile a court normally evaluates the propriety of a removal by determining whether the allegations on the face of the complaint satisfy the jurisdictional requirements, fraudulent joinder claims are assertions that the pleadings are deceptive. Thus, in cases where fraudulent joinder is claimed, we have directed courts to pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available." (internal quotation marks and citation omitted)). The party asserting fraudulent joinder bears a "heavy burden" inasmuch as that party "'must demonstrate that there is no possibility that the non-removing party would be able to establish a cause of action against the joined party in state court.'" *See Montano v. Allstate Indem.*, 211 F.3d 1278, \*1-2 (10th Cir. 2000) (unpublished) (alterations omitted) (quoting *Hart v. Bayer Corp*, 199 F.3d 239, 246 (5th Cir. 2000)). "This standard is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed, the latter entails the kind of

---

[2] Pursuant to Rule 32.1(A) of the Federal Rules of Appellate Procedure for the Tenth Circuit, "[u]npublished decisions are not precedential, but may be cited for their persuasive value."

merits determination that, absent fraudulent joinder, should be left to the state court where the action was commenced." *Montano*, 211 F.3d at *2.

After initially resolving all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party, the Court's task is "then to determine whether that party has any possibility of recovery against the party whose joinder is questioned." *Id.* at * 1 (internal quotation marks and citation omitted). "[R]emand is required if any one of the claims against the non-diverse defendant . . . is possibly viable." *Id.* at * 2 (citing *Green v. Amerada Hess Corp.,* 707 F.2d 201, 206 (5th Cir. 1983)). The Court examines state law to determine whether any of Plaintiffs' claims are "possibly viable." *Montano*, 211 F.3d at *2; *see Hart*, 199 F.3d at 246 ("To prove their allegation of fraudulent joinder [removing parties] must demonstrate that there is no possibility that [plaintiff] would be able to establish a cause of action against them in state court." (alteration in original) (internal quotation marks and citation omitted)).

The tort at issue here—interference with contractual relations—is "well recognized" in New Mexico law. *M & M Rental Tools, Inc. v. Milchem, Inc.*, 1980-NMCA-072, ¶ 14, 612 P.2d 241. "The general rule [is] that one who, without justification or privilege to do so, induces a third person not to perform a contract with another is liable for the harm caused by his action." *Zarr v. Washington Tru Solutions, LLC*, 2009-NMCA-050, ¶ 6, 208 P.3d 919 (internal quotation marks, citation and alteration omitted); *see M & M Rental Tools, Inc.*, 1980-NMCA-072, ¶ 20 (adopting the

Restatement of Torts 2d, § 766B definition of the tort[3]).  The tort encompasses interference with both prospective and existing contractual relationships.  *Zarr*, 2009-NMCA-050, ¶ 6.  "When an employment relationship is at-will, any claim of intentional interference with that relationship is treated as interference with a prospective employment relationship."  *Id.* ¶ 17.  To prevail on this claim, a plaintiff is required "prove that [the defendant] took action that persuaded [a third party] to break its commitment to [the plaintiff], and that [the defendant] accomplished this either with an improper motive or through improper means."  *Fikes v. Furst*, 2003-NMSC-033, ¶ 20, 81 P.3d 545; *see Zarr*, 2009-NMCA-050, ¶ 6 (internal quotation marks omitted).  "What may qualify as 'improper means' depends to some degree on context and can include, but is not limited to predatory behavior, violence, threats or intimidation, deceit or misrepresentation, bribery, economic pressure, unfounded litigation, defamation, unlawful conduct, and perhaps violation of business ethics and customs."  *Zarr*, 2009-NMCA-050, ¶ 11.

Here, Plaintiffs alleged in their *Complaint* that

53.  Plaintiffs were employed by Defendant Coram pursuant to an implied-in-fact contract for employment at will.

. . .

---

[3] "One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation."

55. Defendant Cowan interfered with Plaintiffs' employment by Defendant Coram by improper means and for improper motives, including by making false and malicious complaints about Plaintiffs to Plaintiffs' superiors thereby causing the termination of Plaintiffs under false pretenses and for false reasons when the actual reasons for the terminations were wrongful and unlawful.

56. Defendant Cowan acted solely to harm Plaintiffs and not to further any legitimate business interests of Defendant Coram.

57. Defendant Cowan's interference was intentional. She knew or should have known that her actions were improper and that they would result in harm to Plaintiffs.

58. Defendant Cowan's wrongful interference with Plaintiffs' employment with Defendant Coram resulted in Plaintiffs' termination and caused Plaintiffs harm in the form of pecuniary losses.

[Doc. 1-2] They further allege that "Defendant Cowan was employed by Defendant Coram as Territory Sales Manager with responsibility over Coram's sales in New Mexico." [Doc. 1-2, ¶ 5] Plaintiffs also made several allegations to the effect that Defendant Cowan objected to their failure to enroll certain patients. For example, they allege that when they refused to enroll patients "without proper physician orders indicating the medical necessity and appropriateness of the therapy," Defendant Cowan and others told them they were being "roadblocks." [Doc. 1-2, ¶ 14] Plaintiffs also allege that Defendant Cowan instructed "referral sources . . . not to include any history of intravenous drug use" when conveying patient history, even though such use might indicate that the patient was inappropriate for infusion therapy. [Doc. 1-2, ¶ 24] Plaintiffs state that these practices violated guidelines and regulations applicable to medical care, including in some cases Coram's own policies. [Doc. 1-2, ¶¶ 12, 13, 16, 18, 26, 28] Plaintiffs maintain that, when Plaintiffs complained about the latter practice

to Rockwell's supervisor, she reported that "sales personnel" had complained about Rockwell and Salazar "obstructing the expansion of Coram's business by establishing roadblocks to enrolling patients." [Doc. 1-2, ¶ 32]

In addition, in Rockwell's affidavit, which Plaintiffs attach to their *Motion to Remand*, Rockwell alleges that:

> 6. On a frequent basis, me or my staff were provided with inaccurate information by Defendant Cowan regarding the status of a patient [which] resulted in delays in enrolling patients and providing them with infusion services.
>
> 7. I received frequent communications from my superiors criticizing my performance and that of my staff as a result of this inaccurate information provided by Defendant Cowan. I know that Defendant Cowan blamed me and my staff, including Amanda Salazar, for the delays because my superiors frequently told me that Defendant Cowan was the source of the inaccurate information that was being used to blame me and my staff for delays.
>
> 8. I was frequently told by my superiors that it was my fault that a patient had not been enrolled yet or that patient care had been delayed and that the patient was not home yet. In fact, I was frequently yelled at by my superiors on the basis of this false information provided by Defendant Cowan.
>
> 9. In providing enrollment information for patients, Defendant Cowan would frequently leave [out] vital information that was needed to assess properly the needs of the patient and to treat the patient properly. For example, on numerous occasions, Defendant Cowan left out information regarding intravenous drug abuse by a patient or she stated that it was an issue in the past. However, I had my staff check with treating physicians or nurses with knowledge of the patients and in a number of cases discovered that the information provided by Defendant Cowan was false and that the patient had been using drugs up to the time they were admitted to the hospital. A patient's current intravenous drug use is a critical piece of information that is required to make a valid assessment of the appropriateness of infusion therapy for a patient. In many cases it will disqualify the patient from infusion therapy.

10. On at least one occasion I was criticized by a superior for having the highest level of drug abuse "no starts" (i.e. patients referred by sales who we were unable to service due to current intravenous drug use) in the region and was told that sales, meaning Defendant Cowan, was stating that I was refusing to enroll qualified patients referred by sales. I explained the situation, but was told to make patient enrollments happen.

11. On numerous occasions Defendant Cowan and employees under her supervision attempted to cause Albuquerque Branch employees to enroll patients and proceed with treatment of them on the basis of physician orders entered in a hospital database, to which we did not have access. . . . .

12. Although my nursing and pharmacy staff were correct that under the circumstances the physician orders needed to be signed, Defendant Cowan persisted in raising the issues with my superiors and I received a number of calls from my superiors accusing me of creating unnecessary requirements and being a "roadblock" to the sales staff.

. . .

17. Mr. Owen's expression that me and my team were already "blackballed" appeared to color his view of me and the view of me by my direct supervisor as a productive and efficient Branch Manager. In the six months preceding my termination I received at least thirty phone calls from my direct supervisor passing along complaints made about me by Defendant Cowan, which my supervisor appeared to accept as legitimate because she told me that I needed to change. None of the complaints were legitimate and all appeared to be based on false allegations from Defendant Cowan. Many related to my insistence that applicable regulations and medical standards be followed.

18. Prior to my termination, my direct supervisor gave me a "final" verbal warning indicating that I was a "roadblock" to the sales team, including Defendant Cowan. This was false and appeared to me to be based on many of the false allegations made about me to my superiors by Defendant Cowan.

[Doc. 10-1] Considering the allegations in the *Complaint* and affidavit, and indulging all inferences in Plaintiffs' favor, the Court finds that the allegations "demonstrate that there is a potentially viable claim that [Defendant Cowan's] actions interfered with Plaintiffs'

employment relationships through improper means, potentially including . . . deceit or misrepresentation, [and/or] violation of business ethics and customs." *Coleman v. Albuquerque-AMG Specialty Hosp., LLC*, No. 13-CV-533 MCA/KBM, 2013 WL 12328916, at *3 (D.N.M. Oct. 24, 2013). Since the Court concludes that there is a possibility that Plaintiffs have a viable claim for interference with contractual relations based on improper means, it is not necessary to examine whether they also have a possible claim under the improper motive prong. *See Montano*, 211 F.3d at *2 (stating that "remand is required if any one of the claims against the non-diverse defendant . . . is possibly viable"); *Sanders v. SMI-ABQ Assets, LLC*, No. 15-CV-01145 RB/LF, 2016 WL 6780350, at *5 (D.N.M. Mar. 22, 2016) (stating that "[t]he issue for the Court to consider is whether there is a reasonable basis to believe [the p]laintiff might succeed in at least one claim against [the defendant]").

In their *Reply*, Defendants first argue that the Court's analysis of fraudulent joinder should resemble the analysis used to determine whether a plaintiff has stated a claim under Fed. R. Civ. P. 12(b)(6). [Doc. 15] They argue that Plaintiffs' *Complaint* is insufficient on its face to state a claim for tortious interference with contractual relations against Defendant Cowan, and, therefore, Cowan was fraudulently joined. [Doc. 15] In support, Defendants rely on *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392 (5th Cir. 2013). However, even if *Mumfrey* supports Defendants' position, the Court sees no need to examine an out-of-jurisdiction case when it is clear from the Tenth Circuit cases cited above that this Court may look beyond the *Complaint* to determine whether Plaintiffs have a "possibly viable" claim against Defendant Cowan. *Dodd*, 329 F.2d at 85 (stating

that "[u]pon specific allegations of fraudulent joinder the court may pierce the pleadings, . . . consider the entire record, and determine the basis of joinder by any means available"); *see Nerad*, 203 F. App'x at 913 (stating that the Tenth Circuit has directed district courts to consider the entire record when determining whether a party has been fraudulently joined); *accord Coleman*, 2013 WL 12328916, at *3 (considering both the allegations in the complaint and in declarations by the plaintiffs attached to the motion to remand).

Next, Defendants argue that, even if the Court considers "extrinsic evidence" beyond the *Complaint*, Rockwell's affidavit does not establish a cause of action against Cowan because it does not dispute that the termination decision was made by Tim Owen, Rockwell's supervisor, rather than Defendant Cowan. [Doc. 15] They point to affidavits by Owen and Defendant Cowan stating that only Owen made the decision to terminate Rockwell, that the termination was based on Rockwell's "insubordinate conduct" and that Defendant Cowan "had no authority to participate in, and did not participate in, the termination decision." [Doc. 15; Doc. 1-4; Doc. 1-5] None of these assertions renders Plaintiffs' claim impossible. First, the tort does not require the tortfeasor's participation in a termination decision. Rather, the heart of the claim is "action [by the tortfeasor] that persuaded [*a third party*] to break its commitment to [the plaintiff]." *Fikes*, 2003-NMSC-033, ¶ 20 (emphasis added). The gist of Plaintiffs' allegations—that Defendant Cowan's complaints about them persuaded Owen to terminate Rockwell's employment and caused Salazar's constructive discharge—is consistent with the tort. Moreover, Owen's statements as to the reason he decided to terminate Rockwell merely raise a fact

question as to the true impetus for the termination; they do not constitute an undisputed fact showing that Plaintiffs' claim is impossible. *See City of Carlsbad v. I&W, Inc.*, No. CV 12-080 BB-CG, 2012 WL 12931286, at *5 (D.N.M. May 15, 2012) (holding that the defendants had not shown with "complete certainty" that the plaintiffs could not prevail where the central issue "remain[ed] a question of fact best left for a jury to decide").

Defendants have not met their "heavy burden" to demonstrate that Plaintiffs fraudulently joined Defendant Cowan to defeat federal jurisdiction based on diversity of the parties. *Montano*, 211 F.3d at *1-2 (internal quotation marks and citation omitted). Hence, the matter must be remanded to the First Judicial District Court.

## III. Conclusion

For the foregoing reasons, the Court **GRANTS** *Plaintiffs' Motion to Remand and Brief in Support* [Doc. 10].

**IT IS FURTHER ORDERED** that, in view of the lack of diversity of the parties, this Court lacks jurisdiction, and this action is **REMANDED** to the First Judicial District Court of New Mexico.

**SO ORDERED this 2ⁿᵈ day of April, 2018.**

_____
**M. CHRISTINA ARMIJO**
**United States District Judge**